KOHN & BORDIER estate of which the Court of Probates has jurisdiction, that
*vs.*
PACKARD.     tribunal might take cognizance perhaps of such matters as

===

## KOHN & BORDIER *vs.* PACKARD.

APPEAL FROM THE COURT OF THE PARISH AND CITY OF NEW-ORLEANS.

The contract of affreightment, does not impose on the owner of the vessel
the obligation to deliver merchandise at the residence of the consignee,
This duty is accomplished by delivering the merchandise at the usual
place of discharge.

Notice to the consignee, of the time and place, when and where the goods are to be landed, is indispensably necessary.

Notice in the newspapers of the time and place of landing goods from a vessel, is not such a notice as places the goods at the risk of the consignee, unless knowledge of that notice, be brought home to him.

Where the notice is not personal, the captain has a right to store the goods at the costs of the consignee.

This was an action to recover the value of a package of goods, shipped at New-York, on board a vessel, of which the defendant was captain, and consigned to the plaintiffs. It appeared from the evidence, that the package was landed on the Levee, but never came into the possession of the plaintiffs. The defendant rested his defence upon a notice which was published in three of the newspapers printed in the city of New-Orleans, and which was proven to have been the usual custome among the merchants of that port, and deemed by them a sufficient notice to consignees. It was in these words: "The packet ship De Witt Clinton, from New-York, is discharging opposite the public square. Consignees will please attend to the receipt of their goods." On the part of the defendant it was further shown that the package in question was subject to debenture, as well as some other merchandise discharged from the same vessel. Custom-house entries for all the goods thus situated, (except that consigned to the plaintiffs) were placed in the hands of an officer, who testified, that had he been in possession of the plaintiffs entry, the package would not have been lost. There was judgment for the plaintiffs and the defendant appealed.

*Slidell*, for appellant. *Moreau* and *Soulé*, for appellees.

*Porter, J.* delivered the opinion of the court.

This action is brought to recover from the defendant, the value of a package of goods, which was shipped on board the

29

vessel of which he is captain, at New-York, and which the plaintiffs allege he failed to deliver to them.

The answer puts the fact of delivery at issue, and on that point alone, the argument has turned in this court.

The package of goods, it is admitted, never reached the plaintiffs. On the arrival of the vessel in port, and on her being moored at the levee to discharge, notice to the following effect was given in three of the newspapers printed in this city: "The packet ship De Witt Clinton, from New-York, is discharging opposite the public square. Consignees will please attend to the receipt of their goods." The package in question was put on the levee, and taken away by a dray, the same day it was landed from the ship. The plaintiffs did not attend in person when the goods were discharged, and had no agent to represent them. The package was subject to debenture, as well as some other merchandise discharged from the vessel. Custom-house entries for all the goods so situated, save that of the plaintiffs, were placed in the hands of an officer on the 25th, and he swears that had he received the entry from them at the same time, the package could not have been lost. The ship was several days unloading.

Several witnesses proved that it is the usage of the port of New-Orleans, for merchants to give notice in the newspapers of the time and place a vessel consigned to them is discharging; and that among merchants a landing of the goods on the levee is considered a delivery, provided due notice has been given. It is also proved, that goods are sometimes left on the levee during the night, in which case there is a general clerk or guard belonging to the vessel to watch them; and sometimes goods are taken back on board the vessel. But the witnesses who establish the custom already stated, seem to think that when this is done, it is a matter of courtesy to their owners, as the consignees of the ship do not consider themselves responsible for the goods.

On this evidence, the case was submitted to a jury in the court of the first instance, who found for the plaintiffs; the judge having charged them, that notice in the newspapers,

was not sufficient to release the defendant from his responsibility The court confirmed the verdict and the defendant appealed.

The principle of law, involved in the case, is said to be of considerable importance to the mercantile community. We can readily believe it, and the case has received, as it merits, the particular attention of the court.

The contract of affreightment, does not impose on the owner of the vessel, the obligation to deliver merchandise shipped on board of her, to the consignee, at his residence. It is a contract to carry from port to port, and the owners of a vessel fulfil the duties imposed on them, by delivering the merchandise at the usual places of discharge. The authorities cited on argument, as well as the reason of the thing, clearly establish this rule.

The contract of affreightment does not impose on the owner of the vessel, the obligation to deliver merchandise at the residence of the consignee. This duty is accomplished by delivering the merchandise at the usual place of discharge.

But though the contract does not require the owners of the vessel to deliver the goods at any other place in the port, but that where ships generally discharge their cargoes, it is not to be concluded that they have a right to land the goods at these places and release themselves by doing so, from all further care and responsibility, without giving notice to the person who is to receive them. The authorities on this subject are contradictory. Some of those cited, support fully the position that a landing on the wharf is equivalent to a delivery. We should have reviewed them, had not the counsel who argued the case carefully on the part of the defendant, very properly refrained from pressing the rule to that extent. We have the high authority of Chancellor Kent for saying, that the better opinion is, there must be a delivery on the wharf to some person authorised to receive the goods, or some act which is equivalent to, or a substitute for it. The contrary doctrine appears to us too repugnant to reason and justice to be sanctioned by any one who will follow it out to the consequences to which it inevitably leads. Persons to whom goods are sent may be absent from the port when the ship reaches it : they may be disabled by sickness from attending to their business : they may not be informed of the arrival of the vessel. Under such circumstances, or many others similar that may be sup-

posed, it would be extraordinary indeed, if the captain were authorised to throw the goods on shore where they could not fail to be exposed to injury from the weather, and would be liable to be stolen. There would be little difference in such an act, and any other that would occasion their loss. Contracts impose on parties not merely the obligations expressed in them, but every thing which by law, equity and custom, is considered as incidental to the particular contract, *or necessary to carry it into effect.* La. Code, 1987. Delivery is not merely an incident to the contract of affreightment, it is essential to its discharge, and as there cannot be a delivery without the act of two parties, it is indispensable the freighter should be apprised when, and where, the ship owner, or his agent is ready to hand over the goods. Holt on Shipping, vol. 2, 102. Jacobs's Sea Laws, 211. 5 Term. 387. Abbott on Shipping, 247. Curia Phillipica verbo fletamento, nos. 1 and 14. Ordenanzas de Bilboa, 136, no. 44. 15 Johnson, 39. 3 Kent's Comm. 170.

Notice to the consignee of the time and place, when and where the goods are to be landed, is indispensably necessary.

Notice then may be considered as indispensably necessary. It was given, the defendant says, by publication in three of the newspapers of this city ; and according to the usage of the port, notice in this way was equivalent to information communicated personally to the consignee of the goods. Admitting this usage to have all the effect ascribed to it in argument, the present case is not brought within it. No usage is established that publication in three of the newspapers has the effect contended for. The witnesses who prove the custom say, that notice must be given *in the newspapers,* and by this we understand *all the newspapers printed in the city.* It would be a very unreasonable custom were it otherwise. If it were, then the consignee must take all the newspapers, and read them, in order to assure to himself the certainty of seeing the notice in those the ship owner selected to make publication in. There is no proof on record the plaintiff took those newspapers in which the notice was inserted ; none that they read them, nothing from which the inference can be drawn they ever saw the notification in question.

But if the custom were proved to have been fully complied with, would that custom so control the law as to make publication in the newspapers binding on the freighter? If we understand correctly the usage as proved in evidence it is this; that notice in the newspapers of the time and place of landing goods from a vessel, is such notice as places the goods at the risk of the consignee. In other words, that constructive notice binds the party as effectually as personal notice would. If this be the custom, then it is one which this court is prepared to say, it cannot sanction. Authorities have been ready to show that the goods are to be delivered according to the usage of the port to which they are shipped. The principle may be admitted without at all affecting the conclusion to which we have come, for though the custom may regulate the delivery, it cannot dispense with it. Such would be the effect however, of the usage relied on in numerous instances. We understand that it is of the essence of the contract of affreightment, that there be an engagement to deliver the goods to the consignee. He consequently must be informed of the time and place the delivery is to be made, to enable him to receive them, and if he has not that information, the other party to the contract cannot dissolve it. Yet the custom relied on assumes that he may; for if notice in the newspapers is to bind the consignee of the goods, though he never hears of it or sees it, and if such notice confers on the master of the vessel the right to land the goods on the levee, where they are destroyed or stolen, then it follows that the custom dispenses with delivery, or any thing equivalent to it. This we think custom cannot do. There must be the act of both parties to terminate the contract, or the default of one of them, to authorise the other to do so.

The practice of giving notice in the newspapers is a useful one. It serves in a great number of instances to bring to the knowledge of the consignee of the goods, where and when he is to attend to receive them. When he has that knowledge he should attend, and if he does not, he must bear the consequences of his neglect. But as in all cases where the notice is not personal, it is uncertain whether knowledge of

Where the notice is not personal, the captain has a right to store the goods at the costs of the consignee.

the fact to be communicated, can be brought home to the party who is to be affected by it, the safest course is for the captain, or the person in charge of the vessel, to store the goods at the cost of the consignees. His right to do so, and their responsibility for the expenses cannot be doubted. See 15 *Johnson*, 38.

We have not overlooked the argument of the defendant; that the loss on this occasion was owing to the neglect of the plaintiffs to attend with their debenture entry. The obligation to have done so, we think depends on their knowledge of the time and place the vessel was to discharge, and as in our opinion, this knowledge is not brought home to them, they were not in default for not attending with their entry.

It would be improper to disguise that we have felt this case not free from difficulty. There are inconveniences in which ever way it is viewed. On the part of the owners or consignees of the ship, that of giving such notice of the time and place of discharge, as will enable them to bring knowledge of the fact home to the persons who are to receive the goods; or in default thereof, imposing on the former the obligation of sending the merchandise to some place of safety. But this inconvenience we think is not to be compared with that to which the latter would be subject, if their property could be landed without their knowledge, and be thereby lost or damaged. On the one side there is additional trouble; on the other probably, a total loss. After the best consideration in our power, we think the conclusion we have come to is most consonant to law, and will tend to promote public convenience.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.