THE NEW ALBANY AND SALEM RAILROAD COMPANY *v.*
CAMPBELL and Others.

Where goods transported by a railroad arrive at the place of destination, and are placed upon the platform of the depot, at the usual place of discharging goods, ready for delivery to the consignee, in good order, and he is notified of their arrival, and pays the freight upon them, the liability of the company as carriers is at an end.

If the consignee does not receive the goods, *it seems* that the carrier must take care of them for a reasonable time for the consignee; but his liability in that respect is that of a warehouseman, and not that of a carrier.

But where the consignee has notice of the situation of the goods at the place of delivery, and pays the freight upon them, and afterwards, without neglect on the part of the warehouseman, the goods are destroyed, the warehouseman is not liable.

*It seems*, indeed, that the payment of the freight under such circumstances, without any arrangement as to the further custody of the goods by the warehouseman, is equivalent to a delivery, so far as to throw the risk of loss upon the consignee.

May Term,
1859.

THE NEW
ALBANY, &c.,
RAILRO'D CO.
v.
CAMPBELL.

Tuesday,
May 24.

APPEAL from the *Montgomery* Court of Common Pleas.

WORDEN, J.—This was an action by the appellees against the appellants, to recover the value of "three crates of queensware," received by the defendants at their depot at *Lafayette*, to be carried to *Crawfordsville*, and there delivered to the plaintiffs at the defendants' depot.

There are two paragraphs in the complaint, one charging the defendants as common carriers, and one as warehouse keepers.

There was a trial by jury; verdict and judgment for plaintiffs, a motion for a new trial being overruled.

The following are the facts, as they appear by a bill of exceptions:

The goods in question appear to have been transported on the defendants' cars to *Crawfordsville*, the place of delivery, and there unloaded in the defendants' depot; and the depot building being full of goods, the crates in question were placed on the platform of the depot, in a place convenient for loading upon drays, and the usual place of receiving and discharging goods. The goods were unloaded in good order; and the roof of the depot extended over the platform on which they were placed. . On the day the goods arrived and were there unloaded, a drayman, who was draying goods from the depot for the plaintiffs, informed the plaintiffs that their crates were outside of the depot on the platform, and that they might get injured; but they told him to let them alone, that they had no room for them. On the next day, the drayman again mentioned the matter to the plaintiffs, and one of plaintiffs' clerks went with the drayman to the depot, and paid the freight on the crates in question. The goods having remained on the platform where they were placed, until the second night after they were thus deposited, they were then destroyed by fire.

These are the substantial facts in the case, and we think it clear that they do not fix any liability upon the defendants as common carriers. It is settled that when goods transported by a railroad arrive at their place of destina-

tion, and are unloaded from the cars and placed upon the platform ready for delivery to the consignee, and he notified of the arrival, the liability of the carrier, as such, is at an end. In such case, if the consignee does not receive the goods, it may be the duty of the carrier to take care of them a reasonable time for the consignee; but his liability in that respect is that of a warehouseman, and not of a carrier. *Thomas* v. *The Boston and Providence Railroad Co.*, 10 Met. 472.— *The Norway Plains Co.* v. *The Boston and Maine Railroad Co.*, 1 Gray, 263. In the case last cited, it was very strongly intimated that notice to the consignee was not necessary to terminate the liability of the carrier, as such, but was not definitely decided, for the reason, amongst other things, that the plaintiffs' agent had notice of the arrival of the goods, as had the plaintiffs in the case at bar.

Some of the remarks of the Court in the case from *Gray*, in reference to the termination of the carrier's liability, are as follows:

" The question, then, is, when and by what act the transit of the goods terminated. It was contended in the present case, that, in the absence of express proof of contract or usage to the contrary, the carrier of goods by land is bound to deliver them to the consignee, and that his obligation as carrier does not cease until such delivery.

"This rule applies, and may very properly apply, to the case of goods transported by wagons and other vehicles traversing the common highways and streets, and which, therefore, can deliver the goods at the houses of the respective consignees. But it cannot apply to railroads, whose line of movement and point of termination are locally fixed.

" The nature of the transportation, though on land, is much more like that by sea, in this respect, that from the very nature of the case, the merchandise can only be transported along the line, and delivered at its termination, or at some fixed place by its side, at some intermediate point. The rule in regard to ships is very exactly stated in the opinion of BULLER, J., in *Hyde* v. *The Trent and Mersey*

*Margin note:*
May Term, 1859.

THE NEW ALBANY, &c., RAILRO'D Co. v. CAMPBELL.

May Term,
1859.

THE NEW
ALBANY, &C.,
RAILRO'D CO.
v.
CAMPBELL.

*Navigation Co.*, 5 T. R. 397: 'A ship trading from one port to another has not the means of carrying the goods on land, and, according to the established course of trade, a delivery on the usual wharf is such a delivery as will discharge the carrier.'

"Another peculiarity of transportation by railroad is, that the car cannot leave the track or line of rails on which it moves: a freight train moves with rapidity, and makes very frequent journeys, and a loaded car, whilst it stands on the track, necessarily prevents other trains from passing or coming to the same place; of course it is essential to the accommodation and convenience of all persons interested, that a loaded car, on its arrival at its destination, should be unloaded, and that all the goods carried on it, to whomsoever they may belong, or whatever may be their destination, should be discharged as soon and as rapidly as it can be done with safety. The car may then pass on to give place to others, to be discharged in like manner. From this necessary condition of the business, and from the practice of these transportation companies to have platforms on which to place goods from the cars, in the first instance, and warehouse accommodation, by which they may be securely stored, the goods of each consignment by themselves, in accessible places, ready to be delivered—the Court are of opinion that the duty assumed by the railroad corporation is—and this, being known to owners of goods forwarded, must, in the absence of proof to the contrary, be presumed to be assented to by them, so as to constitute an implied contract between them—that they will carry the goods safely to the place of destination, and there discharge them on the platform, and then and there deliver them to the consignee or person entitled to receive them, if he is there ready to take them forthwith; or if the consignee is not there ready to take them, then to place them securely and keep them safely a reasonable time, ready to be delivered when called for. This, it appears to us, is the spirit and legal effect of the public duty of the carriers, and of the contract between the parties, when not altered or modified by special agree-

ment, &c.   *   *   *   From this view of the duty and
implied contract of the carriers by railroad, we think there
result two distinct liabilities; first, that of common car-
riers, and afterwards that of keepers for hire, or warehouse
keepers, the obligations of each of which are regulated by
law.

"This view of the law, applicable to railroad compa-
nies, as common carriers of merchandise, affords a plain,
precise, and practical rule of duty, of easy application,
well adapted to the security of all persons interested; it
determines that they are responsible as common carriers
until the goods are removed from the cars, and placed on
the platform; that if on account of their arrival in the
night, or at any other time, when, by the usage and course
of business, the doors of the merchandise depot or ware-
house are closed, or for any other cause, they cannot then
be delivered; or if, for any reason, the consignee is not
there ready to receive them; it is the duty of the company
to store and preserve them safely, under the charge of com-
petent and careful servants ready to be delivered, and actu-
ally deliver them when called for by the party authorized
and entitled to receive them; and for the performance of
these duties, after the goods are delivered from the cars,
the company are liable as warehousemen, or keepers of
goods for hire."

In the case at bar, the goods were unloaded in good or-
der, and placed upon the platform of the depot, the usual
place of receiving and discharging goods, and the plaintiffs
had abundant notice of their arrival, and they paid the
freight thereon. The goods were received upon one day
about noon, and the plaintiffs had notice on the same day.
On the next day, their clerk or agent went to the depot
and paid the freight, and on the night thereafter the goods
were burnt up. The liability of the carrier, as such, was
terminated when the plaintiffs were thus notified and paid
the freight, if not immediately upon the goods being dis-
charged from the cars.

We are also of opinion that the evidence fails to estab-
lish any liability against the defendants as warehousemen.

May Term,
1859.

THE NEW
ALBANY, &C.,
RAILRO'D CO.
v.
CAMPBELL.

The accident of the burning of the goods is not shown to have occurred through any negligence of the defendants, nor does it appear that, under the circumstances, the leaving of the goods on the platform, instead of placing them inside of the depot, was a culpable neglect of the duty of the defendants, especially as the plaintiffs, with full knowledge as to the situation of the goods, paid the freight thereon, without at all objecting to the goods remaining where they were then placed until the plaintiffs could receive them. Indeed, it is not clear that the goods were, after the plaintiffs paid the freight thereon, in the custody of the defendants as warehousemen at all. When the freight was thus paid, the goods then being delivered on the platform, the usual place of discharging goods, the plaintiffs were at liberty to remove them whenever they saw proper, and these facts would seem to amount to a delivery so far as to throw the risk of loss upon the plaintiffs, who thus permitted them to remain in that situation. By paying the freight upon the goods, thus placed on the platform ready for the plaintiffs, without making any arrangement as to the future custody or care of them, it would seem that the plaintiffs accepted the goods in the situation in which they were placed, and that the obligations of the defendants to take further charge of them ceased.

But whether this last view be correct or otherwise, we are of opinion that such negligence is not shown as would render the defendants liable as warehousemen; and that a new trial should be granted. The evidence, it may be remarked, is not at all conflicting, and taken all together falls short of making out such a case as would render the defendants liable.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*S. C. Willson* and *J. E. McDonald*, for the appellants (1).
*I. Naylor* and *J. Wilson*, for the appellees.

---

(1) Counsel for the appellants cited *Thomas* v. *The Boston, &c., Railroad Co.*, 10 Met. 472; S. C. 1 Am. Railw. Cases, 403; *Norway Plains Co.* v. *The Boston, &c., Railroad Co.*, 1 Gray, 263; *Stevens* v. *The Boston, &c., Railroad Co.*, id. 277.