ANGLE v. THE MISSISSIPPI AND MISSOURI RAILROAD
COMPANY.

1. **Common carriers: LIABILITIES.** Common carriers are bound to deliver
property received for transportation according to the undertaking, subject
only to contingencies arising from the act of God, or from the public
enemy.

2. —— BURDEN OF PROOF. The burden of proof is upon a common carrier
who has received property for transportation, to show the circumstances
which excuse them or relieve them from liability.

3. —— DELIVERY. It is the duty of a common carrier to deliver property
transported, to the consignee or to such person as he may direct; and,
until such delivery, or that which is equivalent, the liability of carrier
continues.

4. —— ABSENCE OF CONSIGNEE. The absence or failure of the consignee to
receive the goods upon their arrival, will not absolve the carrier from
responsibility. He is bound to make reasonable efforts to place them in
proper hands, and if this cannot be done, he may take care of the goods
by holding them himself.

5. —— RULES. In the absence of special circumstances or rules, he may
lodge them with suitable persons for the owners, and, whether held
or thus lodged, the duties of the carrier cease; but if, according to
the uniform course of business, goods not demanded or called for within
a specified time, are disposed of and kept in a particular manner, or in a
designated building, he cannot terminate his liability by lodging them
with some third person not authorized to receive them.

6. —— DELIVERY TO AGENT. If a common carrier delivers goods to a per-
son as the agent of the owner, he must show the fact of agency, or
circumstances which, in the opinion of the jury, would justify such
delivery.

7. —— RULES: BAILEES: DELIVERY. Where one of the rules of a railroad
company provided that goods should be taken away within twenty-four
hours after the removal from the cars at their destination, and if not
thus removed should be placed in store and storage charged thereon, it
was held, 1st. That if placed in store after the expiration of twenty-four
hours, the liability of the corporation would be changed from that of
common carriers to that of bailees, but, 2d. That a delivery of the
goods to another party, who had no authority to receive the same, within
the twenty-four hours, did not change the liability of the corporation,
notwithstanding the owner did not make a demand for the goods until
after the expiration of the time mentioned.

8. —— QUERY. Would the liability of common carrier continue after the goods were placed in store and before the expiration of the twenty-four hours?

9. —— AGENT OF COMMON CARRIER. The agent in charge of the general business of a common carrier at a particular place, has the *prima facie* power to bind his principal by contracts for the storage of goods, but cannot make a valid contract inconsistent with established rules of the principal, which were known to the other party.

10. —— CONSIDERATION. A contract for storage with a common carrier is not binding if not supported by a consideration; but may bind the company so far as to prohibit the delivery of the goods to a third person.

*Appeal from Washington District Court.*

WEDNESDAY, JUNE 14.

DEFENDANTS are common carriers, and this action is brought for the non-delivery of certain boxes, bales and barrels of goods received by them to be transported and delivered to plaintiffs according to contracts made on the 21st of January, 1858. The goods were shipped at Muscatine, to be delivered (as is now admitted) at Iowa City. They arrived at the depot in Iowa City on the 22d, and within twenty-four hours were delivered to Eaton & Morse, warehousemen, at that place, where they remained until the night of the 28th of January, when they were entirely consumed, with the building, by fire. Trial, verdict and judgment for plaintiffs, and defendants appeal.

*Cook & Drury* for the appellants.

*Grant & Smith* for the appellees.

WRIGHT, Ch. J. — The facts out of which this controversy arises will be found somewhat in detail in 9 Iowa, 487. We shall therefore content ourselves with the statement of such additional facts as seem to be strictly necessary to the determination of the question now before us.

On the former hearing plaintiffs insisted, that by the terms of their contracts defendants were bound to deliver their goods at Cedar Rapids. That position is now abandoned, and the whole cause of action is based upon the failure to deliver to plaintiffs at Iowa City, and this liability is sought to be fixed upon them in their capacity of common carriers, and not as warehousemen. It is admitted that the goods arrived safely at the depot, and that they were turned over to Eaton & Morse, and were in their warehouse at the time of the fire. It is well established that the company had a good and commodious warehouse at Iowa City, in which the goods might have been stored. Prior to the 1st of January, 1858, Eaton & Morse were in partnership with one Thompson, under the name of J. Thompson & Co., and in that name transacted a general commission and warehouse business. Up to this time plaintiffs, for the most part, transacted their commission business with this firm, and goods of theirs received at the depot, under a general written order, were delivered to them, whether so specifically consigned or not. On that day Thompson retired, and the business was continued in the name of Eaton & Morse. The goods in controversy were not shipped to any consignee at Iowa City. It was the custom of the company, when goods arrived for points beyond Iowa City (that place being at the time the terminus of the road), if no consignee was named, and they were not called for within twenty-four hours, nor claimed by some other consignee showing authority to receive them, to turn them over to Fiske & Elliott, other warehousemen, at the depot, though there were frequent instances where the goods were permitted to remain in the warehouse of the company for several days. The following printed rule was posted in the warehouse of the company at Iowa City: "*Twelfth.* All articles of freight, on arriving at their place of destination, must be taken

Angle v. Mississippi and Missouri Railroad Company.

away within twenty-four hours after being unloaded from the cars; goods remaining uncalled for at the end of that time will be placed in store and *storage charged on them.*" There was testimony tending to show that plaintiffs made a special arrangement with the freight agent or superintendent at Iowa City before shipping the same, by which these goods were to be delivered to their teams from the depot, with the view of saving storage and the payment of charges to commission men. There was no testimony that Eaton & Morse were specially authorized to receive these goods. They took them, doubtless, in virtue of what they supposed was their right as successors of Thompson & Co., and under the general order held by the old firm. It is not claimed that this order authorized the company to deliver the goods to the new firm. It is insisted, however, that the testimony sufficiently establishes the fact that E. & M. were the general agents of plaintiffs, and that the company were justified in delivering the goods to them. Bearing upon the last question there is much testimony, the recapitulation of which is unnecessary. It was all submitted to the jury under instructions from the court, and if these instructions were correct, this testimony only becomes material in considering whether it warranted the verdict. We then pass to the consideration of these instructions, and particularly those bearing upon the two controverted points, to wit, the alleged special agreement with the freight agent or superintendent, and the right of the company to store the goods with Eaton & Morse. The latter is the material inquiry; for, if the jury had found that these warehousemen were agents of the consignors, we have no thought that the alleged special agreement would have figured to any extent in their deliberations. We think it but too apparent that the case was determined without reference to this agreement, and upon the grounds that Eaton & Morse were not the agents,

general or special, of plaintiff, and that defendants were not justified, therefore, in delivering the goods to them. Both aspects of the case, however, will receive attention as we proceed with the instructions.

And here brevity may appropriately be consulted by stating our views of the law governing the controversy, instead of copying at length the various instructions, covering, as they do, some thirty-two pages of the record. This course we the more readily adopt, as most of the essential principles contained in these instructions will be found in the opinion of WOODWARD, J., delivered when this case was formerly before us, and especially on pages 500, 501, 502 (9th Iowa). The rules there recognized will serve much in abbreviating the present discussion.

As already suggested, defendants are liable, if at all, in the present action as common carriers. With any possible

1. COMMON CARRIERS: liability. liability as warehousemen we have nothing to do, as they are not sought to be charged in that capacity. As common carriers they were insurers of these goods to the extent that they were *bound to deliver them according to their undertaking*, subject only to contingencies arising from act of God or from public enemies. In all other cases they are held responsible for the safe carriage and delivery of goods committed to their care.

Having received goods and undertaken their transportation, if a loss occurs the burden of proof is upon them

2. —— burden of proof. to show that the circumstances were such as to excuse them or relieve them from liability. And in this respect a plain distinction obtains between common carriers and other bailees of goods. The first are liable in all cases with certain fixed, precise and well understood exceptions, while the others are only chargeable for such want of care and diligence as pertains to the character of the bailment. (*Thomas* v. *B. P. R. R. Co.*, 10 Met., 472; *Norway Plains Co.* v. *B. & U. R. R.*, 1 Gray, 263.)

Lord MANSFIELD says : "The law presumes against the carrier, unless he shows it was done by the king's enemies, or by such acts as could not happen by the intervention of man, as storms, lightnings and tempests." (*Forward* v. *Pittord*, 1 Tenn., 27; and see *Colt* v. *McMechen*, 6 Johns., 160 ; *McArthur* v. *Sears*, 21 Wend., 192 ; *F. & M. Nav. Co.* v. *Wood*, 26 Eng. Com. Law, 358.) The liability of the carriers attaches *prima facie* in losses by fire. (*Ins. Co.* v. *Ind. & Cin. Railway*, and see *Dorr* v. *N. J. Steam Nav. Co.*, 11 N. Y., 485.)

In this case the loss resulted from fire, and there is no suggestion that it falls within either of the exceptions above named. If, therefore, at the time of said loss the company held these goods as common carriers, or had done no act which legally relieved them from their liability as such, they must abide the consequences. If, on the other hand, the transit was at an end, legally and properly, then they are not responsible, and plaintiffs cannot recover. (*Blossom* v. *Griffin*, 13 N. Y., 569.)

Whether railway carriers are required to notify the owner or consignee of freight of its arrival, is a question somewhat mooted by the authorities, with the preponderance, according to Mr. Redfield, in favor of the doctrine that such notice is not required. (Railways, 251, 252, and see *Ostrander* v. *Brown*, 15 Johns., 39 ; *Hemphill* v. *Chenie*, 6 W. & S., 66 ; *Fisk* v. *Newton*, 1 Denio, 45 ; *Price* v. *Powell*, 3 Comst., 322 ; *Farmers' Bank* v. *Champlain Trans. Co.*, 23 Vt., 186 ; 2 Pars. on Cont., 187–190 (5th ed.) ; *Mich. Cent. R. R. Co.* v. *Ward*, 2 Mich., 538 ; *Same* v. *Hale*, Id., 243 (this case overrules the one in 2 Mich.) ; *Kone* v. *Packard*, 3 La., 224 ; *Chickering* v. *Fowler*, 4 Pick., 371.) In the present case no such question arises, as it fairly appears that plaintiff had notice, not only of the time that the goods were shipped, but also of their arrival before the loss. And as it is not claimed that the giving of this notice,

or the failure to do so, had any very material bearing on the trial, we need not further express our opinion as to its necessity. In addition to this, the court instructed that such notice was not necessary; and thus far, therefore defendants cannot complain.

It was the primary duty of the company to deliver these goods to plaintiffs, or to such person as they had directed. Until such delivery, or that which is legally equivalent, as hereafter explained, their liability as carriers continued. (*Hyde* v. *S. and M. Nav. Co.*, 5 T. R., 389; *Gibson* v. *Culver*, 17 Wend., 305; *Eagle* v. *White*, 6 Whart., 505; *Adams* v. *Blankenstein*, 2 Cal., 413.) In determining whether a delivery has been made, it is the duty of courts and the jury to examine all the facts bearing upon the question, and especially the character of the transaction, as well as the interests of the parties. (2 Pars. on Contr., 184.) According to Mr. Redfield (Railways, 251), the cases, to some extent, regard the question, when the duty of carriers ends, as one of fact, or contract, to be determined by the jury, with reference to the mode of transportation, the special undertaking, if any, the course of business at the place, and other attending circumstances. It finally resolves itself, often, into the inquiry, whether the carrier did all, in respect to the goods, which, under the peculiar duties of his office, the owner had a right to expect of him. But when the facts are not disputed, and the course of business of the carrier is uniform, the extent of the carrier's liability will become a question of law merely, as all such matters are, under such circumstances. And see 23 Vt., 186; *Noyes* v. *Rut. and Bur. Railway*, 27 Id., 110; *Stephenson* v. *Hart*, 4 Bing., 476.

The absence of the owner or consignee, or his failure to be ready to receive the goods at the time of their arrival, will not absolve the carrier from all responsibility. He should still make all reasonable efforts

*3. —— delivery.*

*4. —— absence of consignee.*

to place them in proper hands, and, if this cannot be done, he may take care of the goods by holding them himself; *in the absence of special circumstances or rules,* may lodge them with suitable persons, for the owner; and, whether held or thus lodged, the duties of carrier cease, and different rules obtain in measuring the owner's rights. (*Fisk* v. *Newton,* 1 Denio, 45 ; *Stone* v. *Wait,* 31 Me., 409 ; *Hemphill* v. *Chenie,* 6 W. & S., 62 ; 2 Pars. on Cont., 186.) If, however, according to the regular and uniform course of business of the carrier, goods not called for — or where the owner or consignee does not demand them within a specified time — they are to be disposed of and kept in a particular manner, or in a designated and known place or building, he cannot terminate his responsibility by lodging them with some third person, not authorized to receive them. If he delivers them to a consignee, he must *know* that he is the agent of plaintiff, or there must be such circumstances as, in the opinion of the jury, justified such delivery. Thus, if the owner held such consignee out as his agent, or so treated him as to lead the carrier, acting with reasonable prudence and caution, to believe him clothed with authority, the delivery might be justified. (Pertinent to this, see *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y., 599.) So, of course, if the person to whom the goods are delivered is the *general* agent of the owner, or is shown to be *particularly* authorized to receive them (thus having a *special* agency), the liability as carrier would cease. If there was no authority, general or special, or if the carrier has not been misled by the owner's acts, the principal, or owner, is not bound by the act of the supposed agents, nor can the carrier excuse himself by such delivery.

Applying, now, these general views to the facts of this case, we remark that it was the duty of the company, when delivering the goods to Eaton and Morse, so far as reliance

is placed upon a general or special agency, to know, at
their peril, that they had authority to receive them. If in
this they were mistaken, they must suffer the consequences,
there being no room for claiming that they were misled
by any act of plaintiffs, in holding them out as agents, or
if any, the question was fairly submitted as one of fact for
the consideration of the jury. And, if it is claimed, that
inasmuch as plaintiffs were not there to receive the goods,
they could properly lodge them with Eaton and Morse, as
suitable warehouse men, then the difficulty is, that the
position is not warranted by the facts, nor would they have
had this right if they had attempted to exercise it. For,
according to the testimony, these goods were delivered to
these consignees upon their claim that they were plaintiff's
agents, and, as such, had a right to receive them. That
defendant delivered them upon this claim, and none other,
is but too apparent. Then, again, they were delivered
within twenty-four hours after their arrival, thereby show-
ing that they were "called for" by the person who was
supposed to have a right to the same, within the meaning
of the twelfth published rule of the company above quoted.
The more conclusive view, however, is, that by this same
rule it was the duty of the company, instead of lodging
the goods with some suitable person (not the agent of
plaintiffs) to place them in store, and there keep them with
the right to charge storage thereon. And, by this rule, we
understand that goods not taken away within the time
designated, were to be placed in the warehouse of the
carrier, and not in that of a third person, except as the
storehouse thus selected was adopted and treated as that
of the carrier. In this case there is no pretense for this
latter assumption, and especially so as the company had a
good and sufficient building in which the goods might have
been stored. Then, again, there would be no right to thus
store in the carrier's house even, until the expiration of

the twenty-four hours, so far, at least, as to give a claim for storage charges. And there would certainly be no right to store with a third person not an agent, until after that time. And while, therefore, the rule is just and reasonable in itself, and while the owner of goods, shipped upon the line, should be held to reasonable diligence, in calling for and receiving the same after their arrival, it must be remembered that according to the provisions of this rule he has a guaranty that his goods will be kept in a particular place. True, he may know, and it may be, that after such storage the carrier's duties cease, and those of a bailee with different duties and liabilities intervene; and yet he may, from choice or necessity, accept or be compelled to recognize the new relation and to measure his rights thereby. But under this rule, which stands so to speak as a contract between shippers or owners and the company, the company cannot shift the responsibility upon any third person with whom they may see proper to store goods so carried. The owner may, if he sees proper, take the risk and expense of such storage as the rule contemplates, and relying upon the agreement of the company, his interests cannot be hazarded by transferring the goods to third persons having no authority to receive them.

· If these goods had been stored in the warehouse of the company, after the expiration of twenty-four hours, we 7. —— should not have hesitated in holding that the car-rules: rier's duties ceased after making such deposit, and bailees: delivery. that, as depositaries or bailees, they were not liable, unless guilty of negligence or the want of ordinary care in their custody. This view is sustained by *Thomas* v. *B. & P. R. R. Co.*, 10 Metc., 472; and see *Matter of Webb*, 8 Taunt., 443; Story on Bail., §§ 446–450; *Platte* v. *Hibbard*, 7 Cow., 497; *White* v. *Humphrey*, 11 Q. B., 43. As they were not thus stored, however, defendants cannot claim the benefit of this rule, and, hence, all instructions

upon this hypothesis were properly refused. And, in this connection, we may remark, that, in the case of *Lichtenheim* v. *B. & P. R. R. Co.*, 11 Cush., 70, defendants were sought to be made liable as *warehousemen*, and all that is said or held there as to the liability of the company for goods taken by mistake from the depot by the wrong person, without fault on their part, is not pertinent to the present inquiry. And upon the general question, see the well considered case of *Norway Plains Co.* v. *B. & M. Co.*, 1 Gray, 263, eminently correct and sustainable in its reasoning, whatever may be said upon the conclusion reached upon the facts established. The case of the *N. A. & S. Railroad Co.* v. *Campbell*, 12 Ind., 55, follows the cases above cited from 10 Metc., 472, and 1 Gray, 263. It turned upon its own peculiar circumstances, and asserts nothing inconsistent with the views herein expressed. Then the court might well conclude that the goods had been delivered to the owner by the carrier as such, and that the liability of the company, if any, was as warehousemen. In this same connection we may say, that, whether the defendants' liability as *common carriers* would continue for twenty-four hours after the arrival of the goods, whether stored in their warehouse before the expiration of that time, or held unstored, is not necessary now to determine, for there are no facts to warrant such inquiry. The question is not free from difficulty, and we, therefore, pass it until it legitimately arises. What is said on this subject in the instructions could have had no legitimate influence, as it is but too manifest that the case turned upon other and more material issues.

Appellant's counsel direct our attention to certain cases in Illinois, under which they claim that their duty and obligations as common carrier ceased after the goods were placed in the warehouse of Eaton and Morse, if this was a safe place for storing the same. It seems to us, however,

they do not sustain the position assumed. The case of *Richards* v. *M. S. and N. J. R. R. Co.*, 20 Ill., 404, follows *Porter* v. *C. and R. I. R. R. Co.*, Id., 407, holding that notice to the owner or consignee of the arrival of goods is not necessary to terminate the liability of the carrier, and that as " soon as the goods arrive at their destination, or at the terminus of the road, and are unloaded and placed safely and securely in the defendant's warehouse, the responsibility of the carrier ceases and that of the warehouseman attaches; and in the latter case it is said, further, that the carrier's duty ceases as soon as the goods are taken from the cars and safely stored in a warehouse of the company, *or that of some other person.* And see similar language by CATON, Ch. J., in *Ill. Cen. R. R. Co.* v. *Alexander*, Id., 23 ; *Davis* v. *M. S. and N. I. Co.*, Id., 412, is based upon the same facts, and follows those above referred to on pages 404 and 407. In all these cases, however, the goods were in the warehouses of the company. Not so in this. And when reference is made to the " warehouse of some other person" or other " safe warehouse," we do not believe that it was intended to hold that the carriers would be excused by depositing in other than their own warehouses, in the absence of custom, and especially when a rule existed like that before referred to, and upon which the owners of goods would have a right to rely. We do not say that if the company had no place of storage, or if no other rule or custom obtained, they might not terminate their liability by passing the goods into the hands of a safe warehouse man. All that we do undertake to decide upon this subject is, that in the face of this rule, and with the undisputed fact, that there was a proper place of storage owned and used by the company, they would not be relieved of their liability as carriers, by transferring the goods to warehousemen not having authority, as special or general agents, or otherwise, to receive them. This conclusion we

Angle v. Mississippi and Missouri Railroad Company.

do not understand to be in conflict with the cases in Illinois, nor with any of those relied upon by counsel.

As to the alleged special agreements. As already suggested, it would seem that this had but little if any weight in the determination of the case. Plaintiffs, from the instructions asked, it is apparent, did not rely upon it, for they only refer to it as a matter of evidence, to rebut the claim that Eaton & Morse were authorized to receive the goods. And the court expressly instructed that, while the agent having the general charge of the business of the company at Iowa City would, *prima facie*, have the power to make an arrangement allowing the goods to remain in the depot, this he could not do in the face of a rule forbidding the same, known to plaintiffs; and, further, such an agreement was entitled to no weight, unless supported by a consideration; but that the company might, nevertheless, be bound thereby, so far as to prohibit the delivery of the goods to a third person. At the instance of the company, the court also advised the jury that, if the contract was in writing (referring to the bills of lading), no talk or agreement prior thereto could vary or alter the legal effect thereof, and yet that such conversations were admissible upon the question whether defendants had a right to deliver the goods to a third person.

To these instructions we can see no just ground of objection. They seem to be well and sufficiently guarded, and, indeed, in view of the testimony, to so present the law touching the alleged special undertaking as to strip it of any practical importance.

The testimony upon this part, as well as upon all others, we have examined with much and patient care. It is voluminous, and in many cases conflicting. Upon the main issue, whether the company was justified in delivering the goods to Eaton & Morse, we are, too, free to admit that, as

*Margin notes: 9. —— agent of common carrier. 10. —— consideration.*

an original proposition, we should have found otherwise. The verdict, however, finds much, very much, to sustain it, upon a review of the entire testimony, and we cannot believe that a sufficient case is made to justify our interference.

                                                   Affirmed.

DILLON, J., having been of counsel, took no part in the consideration of this case.