FRANCIS v. THE DUBUQUE & SIOUX CITY RAILROAD CO.

1. **Common carrier:** WHEN LIABILITY OF RAILWAY COMPANY TERMINATES. The liability of a railway company as a common carrier of freight terminates, and its responsibility as a warehouseman commences, upon the arrival of the goods at the point of destination and their deposit there in the warehouse of the company to await the convenience of the consignee.

2. —— RULE APPLIED. A railway company received and undertook to carry for F. certain goods from C., the place of shipment, to A., the place of delivery and where F. resided. The goods arrived at A. on time, at about 8 o'clock P. M.; but F. was not there to receive them, nor was he notified of their arrival; they were accordingly unloaded and safely placed in the company's warehouse, separated and made ready for delivery. During the night the warehouse was burned and the goods consumed with it: *Held,* that the company were not liable as common carriers.

3. —— FAILURE TO ARRIVE ON TIME. A different rule might apply where the goods arrived out of time, and the consignee had been active in endeavoring to find them or to ascertain the probable time of their arrival, and no notice was given to him by the company when they did arrive.

<em>Appeal from Hardin District Court.</em>

TUESDAY, JUNE 9.

PLAINTIFF seeks to recover the value of certain goods lost by fire in defendants' warehouse on the night of the 11th of March, 1867.

The goods were shipped from Chicago to Ackley, the latter being plaintiff's place of business. They were

received by the defendant at Dubuque on the morning of the day named; taken by cars to Ackley, where they arrived within fifteen minutes of eight o'clock P. M.; were at once unloaded and safely placed in defendant's warehouse, separated and ready for delivery. Sometime between eleven and four o'clock that night the warehouse was burned, and all said goods consumed with the building, neither party having any knowledge of the origin of the fire. Plaintiff resided within forty or fifty rods of the warehouse. He had no notice of the arrival of the goods, nor was it the custom of the company to give such notice.

Among others the company had established the following general rules and conditions in relation to the transportation of freight: "3. Nor will they hold themselves liable for damages by fire or as common carriers, for any article after its arrival at its place of destination on this road." "13. Property must be removed within two days after it is unloaded from the cars at the place of delivery. If not so removed storage will be charged at the rates named below, or, at the option of the company, it will be transferred to a private warehouse and stored at the expense of the owner."

"14. Rates of storage.
For 3 days and under 10, 4, c. p. 100 lbs., etc.

"Consignees residing at a distance from the station will be allowed from five to ten days' storage free."

Upon these facts the court below found for plaintiff, and defendant appeals.

*Allison, Crane & Rood* for the appellant.

*E. W. Eastman* for the appellee.

WRIGHT, J. — There is no question of negligence or the want of proper care in this case. The real point is,

1. COMMON
CARRIER:
when liability
of railway
company ter-
minates.
whether under the facts stated, defendant is liable and is to be held as a common carrier, or whether this relation had ceased at the time of the loss, and that of warehouseman commenced. If the latter was the relation, then there can be no pretense of liability; if the former, it is not denied. In other words, the defendant's position and that which counsel undertake to maintain, is, that when the goods were unloaded from the cars and safely deposited in the warehouse, the liability as common carrier ceased; that after this the company was only subject to the liability of a warehouseman, and as such was not responsible for the loss in the absence of negligence. And this position plaintiff denies, insisting that defendant was still an insurer of the goods, notwithstanding they had arrived at their destination and been transferred from the cars to the warehouse. And thus we have the very question which was referred to but not decided in *Angle* v. *Mississippi and Missouri Railroad Co.* (18 Iowa, 555), and which is thus far an open question in this State.

The question is an important one, and has received that attention which the magnitude of the interests involved demands. It relates to merchandise transported by the carrier and not to the baggage of passengers, nor to the peculiar liabilities of the company as a carrier of persons. It must be viewed in reference to the growth and increase of the business of railroads in this and other States, and the rights of consignees in connection with the untold amount of property annually transported on their lines. Long and well established principles must not be overlooked. And though it should occur, that the liabilities of a common carrier and warehouseman should unite in the same company, we are not to confound the law governing each, but must declare the rules applicable

Francis v. The Dubuque & Sioux City R. R. Co.

precisely as though the warehouseman and carrier were different persons.

Now suppose the warehouse in this instance had been owned by a third person, and defendant had announced the rules and regulations referred to in the statement of the case, and with a knowledge of which plaintiff, we may remark, made his contract to have his goods carried, could there be any fair room for claiming, that the company would be liable as common carriers? It seems to us that the transit in such a case would be at an end when the goods were unloaded and placed in the warehouse. If not, when would it be? If it continues for four or eight hours after the deposit, then why not twenty-four or forty-eight? And if thus at an end, if the goods were left with a third person as a warehouseman, so it would be when the goods are transferred from the defendant's cars to its warehouse. There is no liability to carry them another rod or foot. They are safely housed at their place of destination, and after this the company would only be liable for the want of proper care.

This was all the defendant agreed to do. The goods were transported safely from the place of shipment to that of delivery. If plaintiff had been ready to receive them there would have been no necessity for storing them. Not being there, the contract as well as reason and the law, directed that the goods should be put into a safe and secure place, there to be kept according to the rules of the company, until he could take them away. Nor do these rules, when properly understood and construed, warrant appellee's position, that the company agreed to be held as a common carrier for two days after the arrival of the goods. A part of the consideration which plaintiff received or was entitled to, by the terms of his contract with the company, was, that his goods might remain in store for two days after they were unloaded from the cars,

without charge. It was just as competent for the company to say, that storage would be charged from the time the goods should be deposited in the warehouse. The regulation as it stands is probably for the benefit of both parties. It is certainly so as to plaintiff. Story on Bailments, § 446.

Then, again, the whole contract, or all the rules, must be read in the light of each other; and as thus read, it is very plain from the third rule, that the company did not undertake to hold itself liable as a common carrier for goods after their arrival at their place of destination on the road. Indeed, it is declared as plainly and distinctly as it can be by words, that it will not be liable after that time. Looking at the thirteenth rule in the light of the third, and what is meant is, that the company will store the goods for two days without charge. Not that it will be held liable during this forty-eight hours as a common carrier, but as a warehouseman, without further charge than that included or covered by the amount paid, or agreed to be paid, for freight.

The view above taken of the rights of parties under such contracts commends itself for its certainty. To say that the responsibility of the carrier continues for one hour after the goods are stored is, on principle, no more reasonable than to say that it shall continue for six, twelve or twenty-four. Where shall be the dividing line? Where shall the liability of the one relation cease and the other commence — if not when the carrier, as such, has fulfilled its contract, and turned the goods over to a bailee of a different character? If not then, at what precise time after the goods are thus deposited shall it take place? Then the very nature of the business transacted — the inability of the company by its means of transportation, to deliver the goods at any other place than its depot or freight house—shows the propriety and reasonableness of

the rule. This, too, is known to the owners of freight. They expect to get their goods at a given depot, where the goods can be safely unloaded and deposited. As a common carrier it is employed to *transport* goods from one point or place to another. It is not reasonable to suppose, that the parties contemplated that the company should be treated as a carrier after the carriage was completed. Not only so, but the rule treating the common carrier as an insurer of goods is a strict one — and while its policy is of course not to be questioned, nor we in the least disposed to lessen its rigor, it ought not to be extended beyond cases clearly coming within its meaning and spirit.

That this conclusion is well sustained by the authorities is capable of abundant demonstration. Thus, by the highest authority on the law of bailments in this country, it is said, that when the goods have arrived at the place of their fixed destination, and are there deposited in the carrier's warehouse, to await the owner's convenience in sending for them, his duty as carrier *ends*, and his duty as warehouseman commences. Story on Bailments, § 448. In support of the doctrine he cites *In re Webb*, 8 Taunt. 443; 2 Kent, 769; and see also *Garside* v. *T. & M. Nav. Co.*, 4 Term, 581; *Thomas* v. *B. & P. Co.*, 10 Metc. 472; *Platt* v. *Hibbard*, 7 Cow. 497; *Roberts* v. *Turner*, 12 Johns. 232; *Brown* v. *Denison*, 2 Wend. 593; *Hyde* v. *T. & M. Nav. Co.*, 5 T. R. 394; *Stevens* v. *Boston R. R. Co.*, 1 Gray, 277; *Norway Plains Co.* v. *B. & M. R. R. Co.*, id. 263.

We are of course aware, that there are cases which take the opposite view of the question. Among them, is the well considered one of *Moses* v. *B. & M. R. R. Co.* (32 N. H. 523), in which many of the authorities on the other side, and especially that of *N. P. Co.* v. *B. & M. Co.* (1 Gray, 263) are referred to and their correctness denied.

And see *Smith* v. *N. & L. Co.* (7 Foster, 86); *Wood* v. *Crocker* (18 Wis. 345); *A. & T. Co.* v. *Kidd* (Ala. 209); *Mich. Central* v. *Ward* (2 Mich. 538); which, however, rests upon their statute; *Rome Railway* v. *Sullivan* (14 Ga. 277). This view, too, is regarded as the better one by Judge Redfield (2 Law of Railways, 55, 62). In this conflict we have felt inclined to adopt the rule which has the most certainty — and is by no means unfair or unreasonable. That it has the sanction of the ablest writers and judges has already been shown. We cite further as directly in point, *Jackson* v. *R. R. Co.*, 23 Cal. 268; *Ill. Cent. R. R. Co.* v. *Alexander*, 20 Ill. 23; *Porter* v. *R. R. Co.*, id. 407; also *N. A. & S. Co.* v. *Campbell*, 12 Ind. 55; and see the authorities collected and discussed in note to *M. S. & N. J. R. R. Co.* v. *Biven*, 13 id. 269; *Neal* v. *Wilmington R. R. Co.*, 8 Jones L. 482.

As to the necessity of notice to the consignee, Mr. Redfield says the cases have settled the question, that the carrier by railway is neither bound to deliver the goods personally, nor to give notice of their arrival. 2 Railway Law, 52; and see *Angle* v. *M. and M. R. R. Co.*, 18 Iowa, 560, and cases cited. If the matter depends upon custom and usage, then notice was not necessary in this case, for it appears that it was not the custom to give such notice.

It is proper to say in conclusion, that the goods arrived on time, and that there is no ground for the thought that the consignee was misled, or that he did not know when his goods would arrive. Should a case arise where the goods arrived out of time, and especially where the consignee had been active in endeavoring to find them or to ascertain the probable time of their arrival — and where the company failed to give notice — we should hesitate before holding that a deposit in the warehouse was an end of the carrier's liability.

3. —— failure to arrive on time.

We also remark, that this case is ruled without giving any weight to the rules and conditions attached to the contract of affreightment, and to which we have before referred. We have looked alone at the common law rights and liabilities of these parties. The regulations, it is sufficient to say, and as heretofore intimated, do not continue defendant's liability as a common carrier beyond the time of the deposit of the goods in the warehouse.

Reversed.