## PACIFIC COAST STEAMSHIP CO. v. MOORE et al.

(District Court, N. D. California. January 11, 1896.)

No. 11,167.

ADMIRALTY JURISDICTION—MARITIME CONTRACT—LIBEL FOR FREIGHT.

On the trial of a libel to recover freight, respondents tendered a certain amount which they conceded to be due; the balance of the claim consisting of money advanced by libelant steamship company to pay charges for railway transportation of the goods to the port at which they were taken by libelant's vessel. *Held*, that the agreement to reimburse libelant for such advances was not a maritime contract, and hence there could be a recovery only of the amount of the tender.

On·rehearing.

This was a libel by the Pacific Coast Steamship Company against E. W. Ferguson, Elida F. Hobson, and John Cook, partners, doing business under the firm name of Moore, Ferguson & Co., to recover a balance of freight alleged to be due.

Geo. W. Towle, Jr., for libelant.

W. B. Treadwell appearing for Mastick, Belcher & Mastick, proctors for respondents.

MORROW, District ·Judge. A libel in personam was filed in this case to recover a balance of freight alleged to be due for the transportation of 2,448 sacks of barley, weighing 271,510 pounds, on one of libelant's steamers, from Moss Landing to San Diego, both ports being within the state of California. The libel alleges that the rate of freight agreed upon was $4.35 per ton of 2,000 pounds, of which sum $2.50 per ton was to be paid by the Howard Commercial Company of San Diego, the consignee of the barley. The balance of $1.85, including a charge of 25 cents per ton for storage in libelant's warehouse at Moss Landing while awaiting transportation, was to be paid by Moore, Ferguson & Co., the shippers. It is averred that the Howard Commercial Company paid, upon delivery of the barley, their agreed portion of·the freight, viz. $2.50 per ton, but that the respondents, Moore, Ferguson & Co., have refused at all times to pay the balance claimed to be owing, viz. $1.85 per ton, aggregating the sum of $251.15,—the amount sued for. The respondents, in their answer, admit that they agreed to pay libelant the sum of $3.10 per ton of 2,000 pounds as freight for the transportation of the barley from Moss Landing to San Diego, and that they would also pay to the libelant such storage charges on the barley as had theretofore accrued at the warehouse of the libelant at Moss Landing, which charges, they are informed and believe, were 25 cents per ton. They admit the payment of $2.50 per ton by the Howard Commercial Company. Pursuant to these admissions, the respondents allege that they have made a tender of the sum of $115.39, being the balance due the libelant in full satisfaction and payment of its demand, and this sum the respondents accordingly deposited in the registry of the court for the libelant. This last sum, added to the $2.50 per ton paid by the Howard Commercial Company, makes the sum of $3.35 per ton, which the respondents claim was the freight charge agreed upon between the parties for the transportation of the barley from Moss Landing to San Diego, including the storage charge of 25 cents per ton. This leaves a charge of $1 per ton as the amount in controversy.

The evidence in the case shows that the rate of freight agreed upon for the transportation of the barley from Moss Landing to San Diego was $3.10 per ton, as alleged in the answer; that the warehouse receipt for the storage of the barley at Moss Landing contained a charge of 25 cents per ton, which Moore, Ferguson & Co. agreed to pay; that there was also an additional charge of $1 per ton, being the amount of the advance freight paid by the Pacific Coast Steamship Company to the Pajaro Valley Railroad Company, for the transportation of the barley by rail from a place called "Blanco," in the interior of the state, to Moss Landing, on the coast, for shipment by vessel. Whether Moore, Ferguson & Co. agreed to pay this last charge the evidence is conflicting, but, in the view I take of the evidence, it is not necessary to determine this question.

G. H. Cooper, an employé of the Pacific Coast Steamship Company, who represented the company in the negotiations for the transportation of the barley, was called by the libelant, and testified that he informed the respondents

that their rate from Moss Landing to San Diego was $3.10 per ton, and that there would probably be charges on the grain from some point on the narrow-gauge railroad to Moss Landing. H. M. Goodall, also called for libelant, corroborates this statement. If such conversation relative to these back charges were had, it does not appear that the rate or amount thereof was fixed upon, or even referred to, until after the shipment on board of the steamer. It is denied by the witnesses for the respondents that anything was said about back charges for railroad transportation until after the grain had been actually shipped, and was in the warehouse of the company at Moss Landing, or that the respondents agreed to do anything more than pay a difference of 85 cts. per ton, the Howard Commercial Company paying $2.50 per ton; making a total charge or rate of $3.35 per ton, instead of $4.35, as is claimed by the libelant, which, of course, includes the $1 per ton railroad charges.

Conceding, for the purposes of the case, that the fact is as testified to by witnesses for libelant, viz. that the respondents had agreed to pay for the railroad transportation, yet this part of the transportation was clearly not maritime, and the contract, with respect thereto, not within the admiralty jurisdiction. A contract, claim, or service, to be cognizable in the admiralty, must be maritime, in such a sense that it concerns rights and duties appertaining to commerce or navigation. The Belfast, 7 Wall. 624, 637. The service rendered must be maritime in its nature. The Hendrick Hudson, 3 Ben. 419, Fed. Cas. No. 6,335; A Raft of Cypress Logs, 1 Flip. 543, Fed. Cas. No. 11,527; Gurney v. Crockett, Abb. Adm. 490, Fed. Cas. No. 5,874; The John T. Moore, 3 Woods, 68, Fed. Cas. No. 7,430; The Murphy Tugs, 28 Fed. 429; The Pulaski, 33 Fed. 383. As a matter of law, the Pacific Coast Steamship Company only became responsible as a carrier when the sacks of barley were delivered to it for shipment on board its steamer.

As was said in The Richard Winslow, 67 Fed. 259: "It is the general rule of law respecting carriers of goods that their liability as carriers terminates with the service of transportation, after a reasonable time and opportunity for the consignee to accept and remove them, and that for any storage thereafter, or any storage previous to and while awaiting orders of the shipper for forwarding, the liability is that of a warehouseman only. Pars. Cont. c. 11, § 9; 2 Am. & Eng. Enc. Law, 878, and note; Peoria & P. U. Ry. Co. v. United States Rolling-Stock Co. (Ill. Sup.) 27 N. E. 59. This rule applies to carriage by water. Carv. Carr. by Sea, § 472. As defined in Kohn v. Packard, 3 La. 224, the contract of affreightment by water is one 'to carry from port to port, and the owners of a vessel fulfill the duties imposed on them by delivering the merchandise at the usual places of discharge.' "

Whatever jurisdiction the court may have had over the contract alleged in the libel, that jurisdiction does not extend to the controversy concerning the payment of the railroad charge of one dollar per ton from Blanco to Moss Landing. The court is therefore not called upon to determine whether there was any agreement upon that subject or not. The arrangements made by the Pacific Coast Steamship Company with the railroad, whereby the railroad charges were to be included in the whole freight charge as a lump sum, must, obviously, be treated as immaterial. No arrangement of transportation charges or statement of account can give this court jurisdiction over a controversy that it does not have by law. Nor does the law relating to the application of payments transfer the controversy to the maritime feature of this contract. The evidence shows that it was the intention of Moore, Ferguson & Co. to apply the payment of $2.50 per ton, made by the Howard Commercial Company, to the charge for water transportation from Moss Landing to San Diego, and the additional tender is specifically made to cover the balance of that charge and the amount due for storage at Moss Landing. How, then, can it be said that the balance claimed to be due is upon a maritime contract? The libelant having failed to prove that there was an agreement to pay more than $3.10 per ton for the transportation of the barley from Moss Landing to San Diego, the decree must be for the libelant for the sum tendered in court.

I do not decide whether Moore, Ferguson & Co. assumed the railroad charges due on the barley for transportation from Blanco to Moss Landing, in order to secure the delivery of the grain at the usual rate at San Diego, as claimed by libelants, as I deem the question of land transportation not within my jurisdiction to determine.