<div align="right">· FASSETT<br>v.<br>RUARK.</div>

---

## Segura v. Reed et al.

The contract of the owners of a vessel employed in carrying freight is, to deliver the goods to the consignee, and the responsibility continues until there is an actual delivery, or something equivalent to, or a substitute for, it. Even assuming the general rule to be that, putting the goods on the wharf discharges the vessel where there has been a notice to the consignee

of the time and place of the delivery, it cannot be construed with such rigor against the consignee as to put the goods unqualifiedly at his risk from the very instant of landing them, where he has made repeated calls for them during the day, and they were not put on the wharf until an advanced hour of the day, and no care or attention was afterwards given to the property by the officers or crew of the vessel. In such a case, if the goods be lost, the owners of the vessel will be answerable for their value, with interest from the time of the loss.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Sigur* and *Bonford*, for the appellant, cited *Kohn* v, *Packard*, 3 La. 225. 3 Kent's Com. 215. *Chickering v. Fowler*, 4 Pick. 271. *L. Janin*, for the defendants, cited 3 La. 225. 1 Ann. R. 154. 1 Story's Rep. 603. The judgment of the court was pronounced by

SLIDELL, J. The claim of the plaintiff is for the value of ten bales of cotton. The plaintiff, a planter, shipped twenty-one bales to *Darby & Tremoulet*, his factors, at New Orleans, by the steamer Aid. Eleven bales only of this shipment came to hand. The defendants pleaded the general denial; also thas the ten bales were delivered on the levée; that due notice thereof was given; and that, if this cotton was thereafter lost or stolen, the defendants were not responsible.

It appears that the steamer arrived at New Orleans on a friday night. The next morning the clerk of the steamer went to the various consignees, to deliver to them their bills of lading. That for *Darby & Tremoulet*, was delivered to *Mr. Darby*, at their counting-house, between 12 and 1 o'clock on saturday. *Darby* went himself to the steamer, and afterwards sent his clerk, at 3 o'clock, to receive the cotton, but he found it was not yet landed; and it does not appear that he was informed that the discharge of the vessel would be finished on that day. On the following monday he went again at 9 o'clock, when it was found that ten bales of the twenty-one were missing. "Witness saw the captain during the day, who told him he supposed the missing bales were at the lower cotton press, and he could send for them. The next day the captain told witness the cotton could not be found at any of the presses, and that he thought he knew who had stolen them. Witness since saw the captain several times on different occasions, and he always promised to call at the office and settle this affair." *Darby* deposes to similar declarations of the captain. A witness who had been formerly clerk of the boat deposes, that *Dutil*, the clerk of the boat, was inexperienced in the business, and that he aided him in discharging the boat; that the boat's cargo was all put out on the levée by 4 p. m. on saturday, and this portion of it was not called for until monday. There is a good deal of testimony upon the subject of an alleged usage of delivering to the draymen or agents of the cotton press, on behalf of the consignees. The district judge considered this usage as not very satisfactorily shown; and, at all events, that it was not proved that *Darby & Tremoulet*, employed any particular press. Without canvassing the correctness of the judge's opinion on this point, we may observe that it results from the evidence of the witnesses on both sides, that it is usual to take a receipt either from the cotton presses or the draymen, upon which the freight is collected afterwards. There is, in the present case, no evidence to show that the clerk, or other agent of the boat, took a receipt from any body, for any portion of the cargo; nor that the least care or attention was exercised with regard to this property, by the officers or crew of the boat, after the moment when it was put out upon the levée; nor that the plaintiff's cotton was separated from the rest, which amounted to four hundred bales.

<div style="float:right">SEGURA<br>v.<br>REED.</div>

The contract of the vessel is to deliver the goods to the consignee, and the responsibility continues until there is an actual delivery, or some act which is equivalent to, or a substitute for, it. Even assuming the general rule to be that, putting the goods on the wharf discharges the vessel, where there has been a notice to the consignees of the time and place of the delivery, it seems to us that this rule is not to be applied with such rigor against the consignee as to put the goods unqualifiedly at his risk from the very instant of landing them, when he has made repeated calls for them during the day, and the discharge is not made until an advanced hour of the day. We do not see with what propriety, under the circumstances stated, the captain and owners of the steamer could be released from all responsibility for the cargo, thus put on the levée at so late an hour of the day, promiscuously, and without any vigilance exercised over it, or over the draymen or other persons who took it away. If there was any certain and well ascertained usage to the contrary, it ought to have been shown. And we may add that, we should receive with great caution, to say the least, evidence of any usage, dispensing a carrier from the exercise of that prudent diligence and method, which are so desirable in all commercial transactions, and without the observance of which they must degenerate into a looseness and uncertainty highly detrimental to commerce.

It is, therefore, decreed that the judgment of the court below be reversed; and that *Marcelite Viator*, administratrix of the succession of *Antoine Segura*, recover from the defendants, *T. M. Reed* and *Alexander Gordon*, and each of them, the sum of $302, with interest thereon from the 2d June, 1845, until paid; and costs in both courts.