## R. Y. NORTHERN *v.* WILLIAMS, PHILLIPS & CO.

A delivery of merchandise on the levee, under proper circumstances, with notice to the consignee, is a good delivery, and discharges the vessel from all liability.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Bonford* and *Britton*, for plaintiff, *Elmore* and *King*, for defendants. The judgment of the court was pronounced by

PRESTON, J. The plaintiff sues the defendants for $250, being the freight of two hundred bales of cotton shipped at Nashville, on board the steamboat Old Hickory, consigned to the defendants, and delivered at New Orleans in January, 1850.

The defendants plead, that the cotton was shipped in good order and condition, that the plaintiff obligated himself to deliver it in like good order, and having failed to do so, no freight is due. They allege, that they suffered damage by the failure of the plaintiff to do so, to the amount of $594, which they claim by reconvention. The claim of the defendants was allowed by the district court, the freight deducted, and judgment rendered in their favor for the balance, against the plaintiff.

Although sufficient negligence is proved against plaintiff, to justify the forfeiture of his freight, we have not been able to concur with the district court in the opinion, that the whole damage to the cotton was caused by the plaintiff, and that the whole loss claimed should be borne by him. The rule of law laid down by the district judge, that a delivery on the levee, under proper circumstances, with notice to the consignees, is a good delivery and discharges the vessel, is the correct rule, and by which the decision of this case is to be governed. Abbot, 378. *Kohn* v. *Packard*, 3 L. R. 225. The only difficulty is in its application to the evidence.

It is not alleged in the answer or reconvention, that defendants had no notice of the arrival of the vessel and the cotton consigned to them ; and the plaintiff was not required by the pleadings, nor any thing which occurred during the trial, to prove that he gave notice to the defendants, of the arrival of the cotton. They probably got their bills of lading before the vessel commenced discharging her cargo, and saw her arrival announced in the gazettes, which always give full reports of the steamboats which arrive, and of the consignments and consignees. *Mr. Shortridge*, the witness of the defendants, to whose press the cotton was to be sent, saw the arrival of the vessel announced the morning after she arrived. *Mr. Prendergrass* and other witnesses prove, that her arrival was reported and known. We are not permitted to believe the defendants less vigilant than other commission merchants. I have no doubt, from the whole evidence, that they did know of the arrival of the cotton consigned to them, soon after it took place ; although the report in the papers would not be conclusive. The bill of lading shows that the cotton was shipped in good order ; and it is admitted by the defendants, that the two witnesses, *Langley* and *Murphy*, would prove that "it was delivered to defendants in good order ; and that the freight sued for was duly earned." These two witnesses were not impeached ; and it was incumbent on the defendants to destroy, by testimony, the effect of the admission.

The vessel arrived on Friday night, commenced discharging on Saturday morning, finished, and left this port, probably with some return freight, on Tuesday morning. It appears, by the testimony of *Mr. Smith*, for the plaintiff, and also of *Mr. Tharter*, for the defendants, that drays were not sent to the levee to haul away defendants' cotton, until Wednesday morning. It therefore lay all day on Tuesday, probably on Monday, and part of it on Saturday and Sunday, on our levee. It was in the very middle of winter, when our levees, in this damp and rainy climate, are in the worst possible condition. It is proved, that it rained on Saturday, and again on Monday ; that the weather was very unfa-

vorable; and all the witnesses concur, that the levee was wet and muddy. It was crowded with produce, and thronged with mules and drays carrying it off. We know that the place of landing the boat was under the direction of the harbor master, and not the plaintiff; and it is not probable, that the plaintiff could select the highest places on the levee, on which to pile this particular lot of cotton, on account of the great quantities of produce in port. He, however, fortunately got moorings at the head of Poydras street, the very centre of the landing for all western produce; and yet it is proved, that some of the bales stood in mud and water, six inches deep. There is no reason to believe he would have landed and left them in a low place, if it could have been avoided. It is more probable, that he would have put them with the other bales on the high parts of the levee, if the drays and mules, horses and carts, and produce already landed, had permitted. Considering the testimony of *Mr. Shortridge*, we incline to think, he had no choice of place left.

We do not think, the steamboats which pay enormous sums for good landings, and which can be exacted by the city authorities, only on the ground, that the money is appropriated for that purpose, and to afford all other conveniences for landing and re-shipments, are answerable for damages, caused by such a horrid state of the levee as the testimony exhibits, or even by low places and holes at the very head of Poydras street.

By the bill of lading and harbor regulations, the boat, under the circumstances, was forced to land the cotton in a bog; and since the boats pay so much for good landings and all conveniences, we are not prepared to say, that the plaintiff should pay damages for not fully complying with the custom insisted upon, which would have obliged him to carry dunnage, and raise the cotton out of the mire in which he was obliged to land it. It would probably soon be insisted, that the masters should leave their tarpaulins to protect the produce from the inclemency of the weather, until it should suit the convenience of the consignees to haul it to the warehouses. We cannot justify the defendants, in leaving their property two or three days in its exposed situation, and then calling upon the plaintiffs to pay the damage. They should more promptly have put their own shoulders to the wheel, to prevent the damage to property, raised and prepared and brought to market with so much care, toil and expense; and called upon the plaintiff, only for the damage which they themselves could not have prevented.

It appears, that sixty-one bales of the cotton was, by mistake, hauled away with a quantity consigned to *Messrs. Mc Gregor, Brown & Co.*, to the Louisiana, instead of the Alabama press, and remained there for ten or twelve days wet and muddy, and no doubt spoiling, before it was hauled to the press to which it was destined, and properly taken care of. It was marked (F) in a diamond; the consignment to *Messrs. Mc Gregor, Brown & Co.* was also marked (F) in a diamond, and the two consignments were only distinguished by not very striking counter-marks. The clerk of the boat made up the manifest from the bills of lading, without the counter-marks, and the draymen and agents of the consignees and presses did not discover them on the levee. There was probably fault on behalf of the shippers, in not distinguishing the different lots of cotton by more striking marks, and in not putting all the marks in the bills of lading; negligence in the clerk of the boat, in not more carefully separating the cotton on the levee, if there was room; carelessness in the consignees, in not ascertaining certainly what was consigned to them respectively; and carelessness especially on the part of the defendants, in leaving the wet and muddy cotton to rot and spoil ten or twelve days in the Louisiana press; and we do not think that

actions of one against the other, on account of this mistake, should be sustained. It appears, that the damaged bales were sent to a cotton pickery, against the remonstrances of the agent of the boat, who wished the cotton sold at auction, to ascertain the loss; and that it is the custom of the cotton pickers, to pick from the bales what they consider damaged cotton, and to retain that as their own, in addition to their charges. We think with the district judge, that such a custom conflicts too much with that state for which we should daily pray, "Lord, lead us not into temptation;" and that it is a custom which would be more honored in the breach than in the observance.

We do not think, that either the plaintiff or defendants have exercised that diligence and care, with this shipment of cotton, which should be taken of such valuable property, and that the testimony presents a picture of reproach to both parties, as well as to our city authorities, all bound to justify, by ceaseless care, their charge of a commerce of mighty magnitude, which our position commands. We by no means wish to render a decision tending to relax the almost super-human efforts which we constantly witness on behalf of the officers and crews of steamboats, in contending night and day with rain and mud, on the steep banks of the Mississippi, in shipping or landing the enormous bales and hogsheads in which the produce of its valley is put up; but the efforts of the defendants themselves, in this case, wears too much the aspect of the husband, lately reported, who stood on the decks of the vessel, and reproached the mate and men for not buffeting more lustily the surges of the sea, to save his wife and child who had fallen overboard, to induce us to impose the whole loss on the boat. We do not think, that either the plaintiff or the defendants have exercised that diligence and care with this cotton, which should be taken of such valuable property, and are of opinion, that neither party is entitled to recover his claims from the other.

It is therefore decreed, that the judgment of the district court be reversed, and that the suit of the plaintiff be dismissed, at his costs; that the claim in reconvention, by the defendants, be dismissed, at their costs, and that they pay the costs of this appeal.