JOHN A. POYTHRESS v. DURHAM AND SOUTHERN RAILWAY
COMPANY.

(Filed 7 October, 1908.)

1. Carriers of Goods—Liability—Notice to Consignee—Reasonable
   Time to Remove—Warehousemen.
   The liability of a common carrier continues until notice is
   given consignee of arrival of shipment of goods at destination
   and a reasonable time given to remove it. Thereafter the car-
   rier's liability is that of a warehouseman.

2. Same—Requirements of Notice.
   Notice of the arrival of a shipment of goods, to relieve the
   carrier of liability as such, need not be served personally on the
   consignee by the carrier. The requirements of Rule 1 of the
   Corporation Commission are applicable: "Notice shall be given
   by delivering same in writing, in person or by leaving it at con-
   signee's place of business or by depositing it in the post office."

3. Pleadings—Demurrer—Cause Defectively Stated—Amendments.
   A demurrer will not be sustained to a complaint merely be-
   cause a cause of action is defectively stated, which may easily
   be remedied by amendment, if necessary.

ACTION heard on demurrer to complaint, by *Cooke, J.,* at
May Term, 1908, of VANCE, to recover the value of a moving-
picture outfit alleged to have been destroyed in the ware-
house of the defendant on the evening of 6 June, 1907.

The complaint contains two causes of action—one charging
the defendant as a common carrier and a second count charg-
ing it as a warehouseman. The defendant demurred to both
causes of action. From a judgment overruling the demurrer
the defendant appealed.

*A. C. Zollicoffer* and *J. H. Bridgers* for plaintiff.
*F. L. Fuller* and *T. T. Hicks* for defendant.

BROWN, J. The facts alleged in the first cause of action,
which, for the purposes of the hearing only, are admitted by
the demurrer to be true, appear to be substantially as follows:
"That on 6 June, 1907, the plaintiff delivered to the de-

fendant, in good condition, at its station in Dunn, two boxes, containing a moving-picture outfit, consigned to the plaintiff, at Duke, N. C., a station on defendant's road, which boxes and contents the defendant agreed to safely transport and deliver to plaintiff at destination; that they arrived at Duke on the same day, late in the evening—too late for plaintiff to remove the same on that day; that soon after the arrival of the boxes at Duke, N. C., on the same evening, 6 June, 1907, after deposit of the same in defendant's warehouse and before plaintiff had been notified of their arrival or had time to remove the same, the boxes were destroyed by fire." The question raised by the demurrer is one which has been much debated by jurists, and about which they are not agreed, as to when the liability of a common carrier of freight ends and its liability as a warehouseman begins. Some courts hold that when the transit is ended and the goods deposited in the warehouse of the carrier the liability as such terminates and the more modified liability of warehouseman begins. The leading case in this country entertaining that view is from the Massachusetts Court, *Norway Plains Co. v. Railroad,* 61 Am. Dec., 423, where the subject is considered at length by *Chief Justice Shaw.* A comprehensive note, citing many cases, is to be found to the case of *Schmidt v. Blood,* 24 Am. Dec., 145, which cites authorities taking the same view.

Another class of cases holds that placing the goods in the warehouse alone does not discharge the company from its liability as a common carrier until the consignee has had reasonable time after their arrival to inspect and take them away in the ordinary course of business. The leading case holding this view was decided, in a very elaborate opinion, upon almost the same state of facts as the *Norway Plains case,* by the Supreme Court of New Hampshire (*Moses v. Railroad,* 32 N. H., 523). *Wood v. Crackle,* 18 Wis., 345; *Rail-*

*road v. Ayres,* 5 Dutch., 393; *Blumenthal v. Brainerd,* 38 Vt., 413, support the New Hampshire rule.

And still there is another class of cases which hold that the liability of the company as carrier continues until the consignee has been notified of the arrival of the goods and has had a reasonable time in the ordinary course of business within which to remove them. This view is maintained by *Judge Cooley,* in a most elaborate and able opinion, in *McMullan v. Railroad,* 16 Mich., 100, concurred in by his eminent associate, *Judge Christiancy.* In that case the Michigan Court was equally divided, the Chief Justice and *Mr. Justice Campbell* holding that notice was not necessary and that the company was liable only as a warehouseman when the goods had been deposited in its warehouse.

In 1905 the Supreme Court of Michigan unanimously adopted the views of *Cooley* and *Christiancy* in the case of *Walters v. Railroad,* 139 Mich., 303. This view is also supported by *McDonald v. W. R. R. Corp.,* 34 N. Y., where the Court of Appeals of New York says: "In those cases, according to the weight of authority in this State, notice to the owner or consignee of the arrival of goods, and a reasonable time and opportunity after notice to remove them, would come in lieu of personal delivery, so far as to change the strict liability of the carrier to that of a warehouseman." See, also, 2 Parsons on Cont. (5th Ed.), 189; Ang. on Carriers, sec. 313; Chitley on Carriers, 90; *Pinney v. Railroad,* 19 Minn., 251; *Railroad v. Fuqua,* 84 Miss., 490; *Railroad v. Hatch,* 52 Ohio St. In the States of Alabama, California, Tennessee and Texas the law is made to practically conform to this latter view by statute, as shown by adjudication of the Courts. *Collins v. Railroad,* 104 Ala., 390; *Wilson v. Railroad,* 94 Cal., 166; *Railroad v. Naive,* 112 Tenn., 239; *Railroad v. Haynes,* 72 Tex., 175.

Not only does the great weight of authority in this country sustain the view of *Judge Cooley,* but such is the English

and Canadian law. *Mitchell 'v. Railroad,* 10 L. R., Q. B., 256; *Chapman v. Railroad,* 5 Q. B. D., 278; *Richardson v. Railroad,* 10 Ont. Rep., 369; 45 Am. and Eng. Ry. Cases, 413. Mr. Hutchinson, referring to the English law on this subject, says: "No trace is there to be found of the distinction which has been made in this country in favor of railway companies, as common carriers, which converts them into mere warehousemen, without notice to the consignee. Notice, it is there held, is necessary to effect this change of character and liability; and after such notice, if the consignee fails to call for the goods, the carrier becomes, as to them, a warehouseman merely. And it is to be gathered from the cases that it is the universal course of business there, with this class of carriers, either to deliver personally or to send to the consignees what are there denominated. advice notes, informing them of the arrival of the goods; and that until this is done the company remains subject to the liability of a common carrier." 2 Hutchinson on Carriers, p. 792. See, also, 4 Elliott, p. 146, where the cases are collected, showing that most of the courts of this country follow the English precedents.

The rule subjecting common carriers to this strict responsibility as insurers is founded on broad principles of public policy and convenience, and, as said by Chancellor Kent, "It was introduced to prevent the necessity of going into circumstances impossible to be unraveled." 2 Kent Com., 602. "It is a politic establishment," says *Lord Chief Justice Holt,* in his celebrated judgment in *Coggs v. Bernard,* 2 Lord Raymond, 918, "contrived by the policy of the law for the safety of all persons, the necessity of whose affairs obliges them to trust to these sort of persons, that they may be safe in their ways of dealings; for else the carrier might have opportunity of undoing all persons who had any dealings with him, by combining with thieves, etc., and yet doing it in such a clandestine way as would not be possible to be discovered." Of

course, the danger from loss by collusion is not near so great in these days as in the semibarbarous times, but upon this point it is well said by the Supreme Court of New Hampshire, in *Moses v. Railroad,* 24 N. H., 71, and again in 32 N. H., 523: "The immense increase of the business, the great value of the commodities now necessarily entrusted to the charge of the common carriers, and the vast distances to which they are to be transported, have multiplied the difficulties of the owner who seeks to recover for the loss of his goods, and have greatly added to the opportunities and temptations of the carrier who might be disposed to neglect or violate his trust." The reasons upon which the rule is founded continue to apply in full force to railway companies as common carriers, and any relaxation of it must be attended only with mischief. These reasons, founded on a sound public policy, require not only that the carrier shall be held as an insurer during transit, but until he has notified the consignee of the arrival of the goods at the point of destination, and until he shall have had a reasonable time to effect their removal. The notice need not be served personally on the consignee. It is sufficient if deposited in the post office, addressed to him, as is provided in the regulations of the Corporation Commission, which provide: "Notice shall be given by delivering same in writing, in person or by leaving same at consignee's place of business or by depositing it in the post office." Rule 1. After service or deposit of the notice the consignee is allowed a reasonable time within which to take his goods away. If he fails to do so, the liability of the company as a common carrier terminates and its less stringent liability as a warehouseman begins.

What length of time will be considered reasonable for the removal of the goods is a question not now presented. It may, however, be said that no fixed or definite rule can be laid down, but it must depend in great measure upon the circumstances of each case. When the facts are undisputed,

it becomes a question to be determined by the court, as one of law; but where they are disputed and unsettled, the question must be submitted to a jury. *Roth v. Railroad,* 34 N. Y., 548; *Lemke v. Railroad,* 39 Wis., 449; Hutchinson on Carriers, p. 796, and cases cited in note.

We do not think that this question was presented or has heretofore been determined by this Court in the case of *Alexander v. Railroad,* 144 N. C., p. 98, or by any other case that has been called to our attention or that we have been able to find.

Our decision renders it unnecessary that we consider the demurrer to the second cause of action. Suffice it to say that we think a cause of action is defectively stated in it, and may be easily remedied by amendment, if necessary.

The defendant will answer over. The ruling of the Superior Court is

Affirmed.