OVERTON, J.
 

 Plaintiffs, through their agent, the Smith Transfer & Storage Company, shipped a lot of household goods by rail on July 16, 1920, from Washington, D. C., to Minden, La. The shipment was made to Clarendon Smith (shipper’s order), with instructions to notify W. M. Wood, care of Standard Oil Company, Minden, La.
 

 The goods arrived at Minden on August 9, 1920, reaching there over defendant’s railway. Plaintiffs removed a part of the shipment to Weller station, about 15 miles distant, on Saturday, August 14, 1920, and on the same day sent a truck and a wagon for the rest of the shipment. Whether the truck reached the depot does not appear, but the wagon reached it late in the afternoon of that day, and its driver, seeing the warehouse closed, and noticing no one around, returned without a load. The next day being Sunday, plaintiffs did not send for the remainder of the shipment. On Monday morning, shortly after midnight, the warehouse was destroyed by fire; and on the same morning, when plaintiffs’ drivers returned, they saw what had occurred, and found that the rest of the shipment had been destroyed by the fire.
 

 The railway company refused to pay plaintiffs the value of the goods, and plaintiffs therefore brought this suit against it to recover their value.
 

 The position of plaintiffs is that the liability of defendant is that of a common carrier, which is equivalent to that of an insurer. On the other hand defendant contends that it is not liable to plaintiffs at all. It avers, in substance, that it is not liable to plaintiffs as a common carrier or insurer, because it duly notified them of the arrival of the- goods, and because, although plaintiffs had several days within which to remove the goods, after having been notified of their arrival, yet they failed to do so, due to their carelessness and negligence, and hence, defendant avers that if it is liable at all, it is liable only under the rules applicable to warehousemen, and that it is not liable under those rules, because the goods were not destroyed by reason of any fault upon its part.
 

 Taking up for consideration, first, the question of defendant’s liability as a common carrier, it may be observed that originally, at common law, the liability of a
 
 *507
 
 common carrier continued as such until the carrier made actual delivery to the consignee of the goods accepted for transportation. However, a modification of this rule was made necessary because of the impracticability of making actual delivery by railroads or carriers by water.
 
 4
 
 R. C. L. Verbo “Carriers”, § 220, p. 752. In making the required modification, at least three rules have developed in this country. In discussing these rules it is said in Poythress v. Durham & Southern Railway Co., 148 N. C. 391, 62 S. E. 515, 18 L. R. A. (N. S.) 427, that:
 

 “Some courts hold that, when the transit is ended and the goods deposited in the warehouse of the carrier, the liability [of the carrier] as such terminates, and the more modified liability of warehouseman begins. The leading case in this' country entertaining that view is from the Massachusetts Court (Norway Plains Co. v. Boston & M. R. Co., 1 Gray, 263, 61 Am. Dec. 423) where the subject is considered at length by Chief Justice Shaw. A comprehensive note, citing many cases, is to be found to the case of Schmidt v. Blood, 24 Am. Dec. 145, citing authorities taking the same view. Another class of cases holds that placing the goods in the warehouse alone does not discharge the company from its liability as a common carrier, until the consignee has had reasonable time after their arrival to inspect and take them away, in the ordinary course of business. The leading case holding this view was decided in a very elaborate opinion, upon almost the same state of facts as the Norway Plains Case, by the Supreme Court of New Hampshire. Moses v. Boston & M. R. Co., 32 N. H. 523, 64 Am. Dec. 381. Wood v. Crocker, 18 Wis. 346, 86 Am. Dec. 773; Morris & E. R. Co. v. Ayres, 29 N. J. L. 393, 80 Am. Dec. 215; and Blumenfhal v. Brainerd, 38 Vt. 413, 91 Am. Dec. 350, support the New Hampshire rule. And still there is another class of cases which hold that the liability of the company as carrier continues until the consignee has been notified of the arrival of the goods and has had a reasonable time, in the ordinary course of business, within which to remove them.”
 

 This last rule, which requires notice to the consignee, and a reasonable time thereafter for the consignee to remove the goods, seems to be supported by the weight of authority in this country, and is also the law in England and Canada. Poythress v. Durham & S. R. Co., supra. It is the rule in this state, at least in the absence of any valid stipulation in the bill of lading or in any agreement between the parties to the contrary. Kohn & Bordier v. Packard, 3 La. 224, 23 Am. Dec. 453; Northern v. Williams, Phillips & Co., 6 La. Ann. 578; Kennedy & Co. v. Roman, 19 La. Ann. 519; Vor. Maignan v. New Orleans, Jackson & Great Northern Railroad Co., 24 La. Ann. 333; Gibbons v. Yazoo & M. V. R. Co., 130 La. 671, 5S So. 505.
 

 In the case at bar, the bill of lading is not silent on the question as to when the liability of defendant as a carrier should cease and when its liability as a warehouseman should begin, for it is stipulated in that instrument that:
 

 “For loss, damage or delay caused by fire occurring after 48 hours (exclusive of legal holidays) after notice of arrival of property at destination or at port of export (if intended for export) has been duly sent or given, the carrier’s liability shall be that of a warehouseman only.”
 

 And again the bill-provides that:
 

 “Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in ear, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier’s responsibility as warehouseman only. * * * ”
 

 The only difference between the rule requiring notice to the consignee and the granting of a reasonable time within which to remove the goods after the giving of notice before the liability of the carrier as an insurer terminates and the foregoing provisions, taken from the bill of lading, is that the bill fixed the time for removal at 48 hours, whereas the rule grants for this purpose “a reasonable time.” This difference, however, is not material here, for we think that the facts in this case justify the
 
 *509
 
 conclusion that plaintiffs had a reasonable time within which to remove the goods.
 

 The evidence on the question of notice and on that of the time in which plaintiffs had to remove the goods shows that the shipment arrived at Minden on the night of August 9th, and that on the afternoon of August 10th, at about 5 o’clock, defendant’s agent mailed a post card, properly stamped, and addressed in accordance with the directions on the bill of lading, to W. M. Wood, care of Standard Oil Company, Minden, La. Wood testifies, however, that no such notice was received. B,e that, however, as it may, it also appears that on the following day, which was the 11th, the agent also notified a Mr. Eay and two other employees of the Standard Oil Company of the arrival of the goods. The notice given Eay reached the plaintiff, Wood, through the latter’s brother-in-law on the afternoon of Thursday the 12th, the exact hour not appearing, but we gather from the record that it was before 5 o’clock in the afternoon. The record discloses that defendant’s warehouse was usually closed at 5 o’clock in the afternoon, that hour being the closing time, and that, on the Saturday following the receipt of the notice, the warehouse was open until that hour. Hence, it appears that not; less than 48 hours intervened between the receipt of notice of the arrival of the goods and the closing of the warehouse on the last business day preceding the fire.
 

 On the day following the receipt of the notice, which was a Friday, plaintiffs made no effort to remove the goods. They testify that they made none, because on that day it rained. While it appears that it rained some on the Friday named, either in the morning or in the afternoon, yet the record does not justify the .conclusion that for that reason it was inexpedient to use a part of the day in removing the goods; Moreover, plaintiffs had all of Saturday up to 5 o’clock in the afternoon in which to remove them, and on that day they might easily have removed the entire shipment.
 

 If, therefore, we decide the case according to the rule requiring a reasonable time for the removal of the goods after notice, still defendant’s liability as a carrier had ceased when the goods were destroyed by fire, for plaintiffs had had before that occurrence ample opportunity within which to remove them, notwithstanding the rain. If, upon the other hand, we. decide the case according to the stipulations in the bill of lading, still defendant’s Eability as carrier had ceased when the goods were destroyed, for the bill of lading does not contemplate that when it rains during a part of the 48-hour period prescribed, the time during which it rains shall not be counted, at least, when ample time remains within which to remove the goods. Hence, from no standpoint is defendant liable, in this instance, as a common carrier.
 

 If defendant is liable at all, it is liable only as a warehouseman, and its liability as such depends upon whether the goods were destroyed by reason of its fault. In passing upon the liability of a warehouseman and the burden of proof in connection therewith, the Supreme Court of the United States said:
 

 “The railway company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver, upon proper demand, his failure to do so, without excuse, has been regarded as making a prima facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff having the affirmative of the issue must go forward with the evidence.” Southern Railway Co. v. Prescott, 240 U. S. 640, 30 S. Ct. 473, 60 L. Ed. 840.
 

 In the case at bar, the evidence utterly fails to show that the goods were destroyed
 
 *511
 
 by reason of any fault or neglect on the part of defendant, nor do the circumstances surrounding the fire indicate the slightest neglect by defendant.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside, and plaintiffs’ demand is rejected at their cost in both courts.