JOHN BONURA & CO., INC., v. N. O. & N. E. R. R. CO. ET AL.

(June 10, 1229. Opinion and Decree.)

Arthur B. Leopold, of New Orleans, attorney for plaintiff, appellant.

Monroe & Lemann and Watts K. Leverich, of New Orleans, attorneys for defendant N. O. & N. E. R. R. Co., appellee.

W. McL. Fayssoux, of New Orleans, attorney for defendant Public Belt R R., appellee.

HIGGINS, J. This is a suit in which the plaintiff claims the value of two cars of watermelons alleged to have been lost under circumstances involving the responsibility of defendants. Originally, two suits were instituted, which were consolidated in the District Court, and on appeal to this court were argued together. There was judgment dismissing plaintiff's demand and it has appealed.

The evidence shows that on August 14, 1920, Louis Guenard shipped from Bonaire, Georgia, to plaintiff at New Orleans, Louisiana, two cars of watermelons. The melons were delivered to Georgia Southern & Florida Railway as the initial carrier under a through bill of lading. The defendants, New Orleans & Northeastern Railroad Company and the New Orleans Public Belt Railroad were, respectively, the connecting and ultimate carriers. The cars arrived in New Orleans August 18, 1920, and on the same day plaintiff, as the consignee, was notified, whereupon it issued written instructions to have the cars placed on what is known as Gravier Street Team Track No. 1 of the New Orleans Public Belt Railroad.

It is plaintiff's contention that these instructions were not followed, but we are convinced that the cars were placed in the locality mentioned at eight o'clock a. m., August 20, 1920, where they remained until August 23, 1920. About four-thirty p.m. of the afternoon of that day the cars were broken open by a number of negroes, who stole the melons.

It is argued that defendants are responsible as carriers and, in the alternative, as warehouseman.

It is apparent that the melons were stolen more than forty-eight hours after the placement of the cars in accordance with instructions of plaintiff. Under the circumstances a reasonable opportunity was afforded plaintiff for the removal of the melons from the cars. Section 4(a) of the uniform bill of lading, 64 I.C.C. 357, as adopted by the Interstate Commerce Commission, reads as follows:

"Property not removed by the party entitled to receive it within the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided), after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given, and after placement of the property for delivery at destination has been made, may be kept in vessel, car, depot, warehouse or place of delivery of the carrier, subject to the tariff charge for storage and to carrier's responsibility as warehouseman, only, or, at the option of the carrier, may be stored in a public or licensed warehouse, or other suitable place, at the place of delivery, at the cost of the owner and there held, subject to the carrier's responsibility as warehouseman only, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

The first paragraph of Section 5 of the Bill of Lading is as follows:

"Property not removed by the party entitled to receive it, within 48 hours exclusive of legal holidays, after notice of its arrival has been duly sent or given, may be kept in car, depot, or place of

delivery of the carrier subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at owner's risk and without liability on the part of the carrier and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

In the case of Michigan Central R. R. Co. vs. Owens & Co., 256 U. S. 427 (65 L. Ed. 1032, et seq.), the Supreme Court of the United States said:

"By referring to Sec. 5 of the bill of lading, it will be seen that it supposes a contingency and provides for its occurrence. It supposes that property may not be removed when it has reached destination, and is available for delivery, and two periods of time are provided for. One of 48 hours after notice of the arrival of the property has been sent or given. During this time there is no declaration of the relation of the railroad company to the property. The other period commences at the expiration of the first 48-hour period, during which the provision is that the property is subject to 'carrier's responsibility as warehouseman only.' The comparison has its significance and must be accounted for. Realizing this, the railroad company makes a distinction. Its contention is that where delivery has been made of the property, as, it insists, was true in the case at bar, the responsibility of the railroad company as carrier immediately ceases. If, however, it is neither delivered nor removed within 48 hours after notice of its arrival, the responsibility of the railroad company thereafter is that of 'warehouseman only.' "

The shipment for the loss of which this suit was instituted is an interstate shipment, and governed by Federal authority and jurisprudence. See Hartness vs. Iberia & V. R. R. Co., 297 Fed. 622. Defendants are not liable as carriers, and if there be any responsibility, it is that of warehouseman:

"If defendant is liable at all, it is liable only as a warehouseman, and its liability as such depends upon whether the goods were destroyed by reason of its fault. In passing upon the liability of a warehouseman and the burden of proof in connection therewith, the Supreme Court of the United States said:

" 'The Railway Company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver, upon proper demand, his failure to do so, without excuse has been regarded as making a prima facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff having the affirmative of the issue must go forward with the evidence. Southern Railway Co. v. Prescott, 240 U. S. 640, 36 S. Ct. 473, 60 L. Ed. 840.' "

Wood et al. vs. La. & A. Ry. Co., 158 La. 510, 104 So. 306.

It does not appear that defendants failed in any respect to exercise reasonable caution for the protection of the watermelons, and, being free from fault, are not responsible, as warehousemen, for the loss of the shipment.

For the reasons assigned, the judgment appealed from is affirmed.