CUTRER, Judge.
This is a suit involving the loss of some thirty-two bales of cotton by fire. Plaintiff, Millers Mutual Fire Insurance Company of Texas, was subrogated to the rights of its insured E. V. Hudspeth, the owner of the cotton, by payment for the loss under the terms of a fire policy provided by the plaintiff. Plaintiff sued the following defendants: Louisiana & Arkansas Railway Company, American Compress Warehouse, Kansas City Southern Railway Company and Texas & Pacific Railway Company. After a trial on the merits, judgment was rendered in favor of *632 plaintiff against American Compress Warehouse; the claims against the remaining defendants were dismissed. American Compress Warehouse has appealed from that judgment. An appeal has also been taken by plaintiff to protect its rights against the other defendants who were dismissed by the judgment of the lower court. We reverse, finding liability on the part of Louisiana & Arkansas Railway Company.
Plaintiff’s insured delivered cotton to Texas & Pacific Railway (hereinafter sometimes referred to as “T & P”) at Rosa, Louisiana, consigned to American Compress Warehouse (hereinafter sometimes referred to as “Compress”) in Alexandria. Some thirty-two bales of cotton were loaded into a single T & P boxcar, shipped on T & P bills of lading. The doors on the car could not be sealed and had to be held in by slats nailed across the doors. The car was taken by T & P from Rosa to Alexandria where it was delivered to Louisiana & Arkansas Railway (hereinafter sometimes referred to as “L&A”), about 9:00 A.M., October 27, 1971. The L&A spotted the car on a spur track owned by L&A, but which ran into the Compress and which was used principally by the Compress. The Compress was notified about 11:00 A.M. of the arrival of the cotton and the spotting of the car on their spur track.
About 3 :00 P.M. that day three employees of the Compress took a coffee break. As they walked by the car in question, they smelled a “hot bale”. These employees were Mr. Kenneth E. DeWeese, the foreman, and two other employees of the Compress, a Mr. Brewster and a Mr. Murphy. Inspection of the car indicated that it contained a “hot bale”, which was detected by feeling of the bales. There was no visible fire or smoke. The “hot bale" was reported to Mr. J. B. McCaa, the superintendent of the Compress. He went to the car and confirmed the findings of Mr. DeWeese. At this point Mr. DeWeese went to the yard office to inform the yardmaster for L & A of the “hot bale” and request the removal of the car. Later Mr. McCaa called the yardmaster and repeated the request. A third request for the removal of the car from its location next to a warehouse full of cotton was made about 8:30 P.M. Quinton Ganey, a clerk for L&A, wrote the request on the Switch List for October 27, 1971: “Pull out acct. Hot Bales Possible Fire.” This notation was discovered and acted upon by Mr. C. E. Progue, Jr., the night yardmaster for L&A. Between 8:30 P.M. and 8:45 P.M., the car was moved by L & A from its position on the Compress spur to a caboose track, where it was isolated and watched by employees of L&A. About 9:30 A.M. the following morning the Alexandria Fire Department received a call from L&A employees who discovered ■ that the car was on fire. Before the fire was extinguished extensive damage was done to the cotton and boxcar. The stipulated loss incurred by plaintiff’s insured was $3,542.63.
After hearing the evidence which has been briefly summarized above, the trial judge rendered judgment for the stipulated amount in favor of plaintiff against the Compress, and dismissed plaintiff’s claims against the remaining defendants. We reverse and find liability on the part of L & A.
Determination of liability in this case rests on whether the cotton was delivered to the Compress by L & A. Since the trial judge did not give written reasons for judgment we do not know if he found as a matter of fact that there had been a delivery of the cotton. However, we find that under the facts as presented in the record a finding of delivery is manifestly erroneous.
 The shipment of cotton was made by T & P' from Rosa to Alexandria, where the cotton was transferred by T & P to L & A. L&A accepted the shipment and spotted the boxcar containing the cotton shipment on the Compress spur track. A *633 tender of delivery occurred at this point. The tender of delivery took place about 11:00 A.M., October 27, 1972. The Compress had a reasonable time thereafter in which to accept or reject the tender.[1] At 3:00 P.M. that afternoon, employees of the Compress, including a foreman and the Compress superintendent, rejected the tender of delivery when they discovered that the cotton shipment contained a “hot bale” and requested that the car be removed from their spur track. Later in the night the car was moved by L & A and placed on one of L & A’s caboose tracks. Since the Compress rejected the tender of delivery by the L & A, L & A retained its status of carrier of the shipment of cotton, and is liable for the loss.
Red River Cotton Oil Co. v. Texas & Pacific Ry. Co., 216 La. 519, 44 So.2d 101 (1949), which has been cited by the parties in brief, is not applicable to the facts before us. In Red River the tender of delivery was not rejected by the consignee, as is the present situation, and the court was required to determine whether, under the terms of the bill of lading, the railway company was liable as a carrier or warehouseman. In the present case there was a rejection of the tender of delivery, so the provisions of the bill of lading discussed in Red River are not pertinent for a determination of liability here. Other cases which have been brought before the courts of this state dealing with similar issues of liability for goods transported by common carriers were studied by this court, but none involved a situation where there was a specific rejection of delivery by the consignee. V. Rivera S. En C. v. Texas & New Orleans R. Co., 211 La. 969, 31 So.2d 180 (1947); Wood v. Louisiana & Arkansas Ry. Co., supra.; Segura v. Reed, 3 La.Ann. 695 (1848); Robertson v. Louisiana Fruit Growers Assn., 80 So.2d 190 (La,App.2nd Cir. 1955); Swift & Co. v. Texas & Pacific R. R. Co., 6 La.App. 7 (Orl.1926). Here there was no delivery, because the consignee rejected the tender of delivery; so L & A’s liability as a carrier never terminated.
For the reasons assigned, the judgment of the trial court is reversed. It is hereby ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Millers Mutual Fire Insurance Company of Texas, and against defendant, Louisiana & Arkansas Railway Company, for the full sum of Three Thousand Five Hundred Forty-Two & 63/100 ($3,542.63) Dollars, with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings. Plaintiff’s claims against the remaining defendants are rejected.
Reversed and rendered.

. Wood v. Louisiana & Arkansas Ry. Co., 158 La. 504, 104 So. 306 (1925).